## Roby v. Croan.

(Decided October 5, 1917.)

Appeal from Bullitt Circuit Court.

1. Elections—Contest—Practice.—In a contest case prosecuted under subsection 28, of section 1550, Kentucky Statutes, no formal bill

of exception is required as it is a special proceeding governed exclusively by said section, and not by section 334, Civil Code.

2. Elections—Primary Elections—Contest—Pleading.—In a contest proceeding arising out of a primary election where contestee attempts to traverse the allegations of the notice but does so unskillfully and unsuccessfully, the trial court may allow an amendment of the traverse so as to make that which was defectively alleged, sufficient, but no additional grounds of contest or other new matter is allowable.

3. Elections—Contest—Recount of Ballots.—Where the ballot boxes in a contested election case are shown to be in the custody of the proper officer and have been properly protected and preserved by said officer from the election up until the trial of the contest, and the ballot boxes, locks and hinges thereon appear to have been properly preserved and unmolested and there is no evidence tending to impeach the integrity of the ballots, the trial court should upon motion open the boxes as further evidence of their integrity; and if when so opened the contents of the boxes appear to be in the proper condition and not to have been violated or molested the trial court should proceed to recount the ballots.

HUGH B. FLEECE for appellant.

J. R. ZIMMERMAN and CHARLES CARROLL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This appeal involves the Democratic nomination for sheriff of Bullitt county. The appellant, W. L. Roby, and appellee, J. W. Croan, were opposing candidates at the primary election held August 4, 1917, for said nomination. According to the finding of the election commissioners, appellee, Croan, received 713 votes, and appellant, Roby, 712 votes. The certificate of nomination was issued to Croan, and Roby filed a contest, alleging and relying upon several grounds. To sustain his contest, and as evidence to support the allegations of his notice, he moved the court to grant him a subpoena *duces tecum* for the county court clerk, requiring the said clerk to produce in court the ballot boxes, ballots, stub-books, tally sheets and other paraphernalia employed in said primary election, and to open said ballot boxes and recount the vote, alleging that if a recount was held it would be found he had received 850 votes and Mr. Croan 574 votes. Appellant objected to the motion, and the lower court heard evidence on the question of whether the ballot boxes had been in the custody of the county clerk, and if so, whether they had been carefully preserved and regularly guarded against violation, and sought to as-

certain whether they were in the original condition in which they left the hands of the election officers, or had been tampered with. Appellant, Roby, called the county court clerk and some other witnesses to show that the ballot boxes had not been unnecessarily exposed and that the ballots were in the same condition they were at the time of the issual of the certificate by the precinct officers. Croan introduced witnesses tending to show that one or more of the ballot boxes had been exposed *to the will of* contestant and other interested persons before it reached the clerk's office on Monday morning after the election, and that all the ballot boxes had been stored by the clerk in a waste room in the court house at Shepherdsville, some distance from the office of the county court clerk, and that this room was so situated that it was easily accessible to designing persons desiring to intrude themselves; and further, that the locks on the ballot boxes were of a cheap and insecure variety and it was impossible to determine whether the boxes had been tampered with or not. The trial judge, upon motion of contestant, examined the ballot boxes and locks. Again contestant moved the court to open the ballot boxes and examine the contents and thus ascertain whether the ballots had been molested, and if found in proper condition, recount them.

This motion was overruled.

The court was of opinion that appellant, Roby, upon whom the burden of showing the integrity of the ballots rested, had not sustained the burden, and declined to allow the ballot boxes to be opened, and entered an order adjudging contestant "not entitled to the relief prayed for and no part thereof. . . . That the contestant's contest be and the same is hereby dismissed, and that the contestee recover of contestant his cost herein, for which he may have execution." From this order refusing to open the ballot boxes and recount the ballots and dismissing the proceeding, the contestant prosecutes this appeal.

Appellee, Croan, insists that this appeal should be dismissed for want of a bill of exceptions. This contention is based upon the fact that the bill of exceptions accompanying the record in this case was signed, settled and filed in the clerk's office of the Bullitt circuit court in vacation. It is well settled that a bill of exceptions cannot be filed in vacation in the clerk's office, nor at any time except during term time. Nor can this rule

be changed by an order of the court; and it is questionable if by agreement of parties entering of record, a bill filed in vacation can be considered. Allord v. Smith, 2nd Metcalf 297; Freeman v. Brehan, 17 B. Monroe 603. Even in a case whereby an agreed order at the same term at which the judgment was rendered, was entered, stating that the bill of exceptions and evidence was filed, approved and made a part of the record, but as a matter of fact the bill was not filed, or approved until the next term, the court held that the bill could not be considered. I. C. Railway Company v. Glasscock, 24 R. 937; N. N. M. B. Railway Company v. Stavig, 98 Ky. 533. If this was an ordinary civil action governed by section 334 of the Civil Code, and not a special proceeding, the motion to strike the bill would prevail.

The practice of contest cases in the circuit court as well as upon appeal, is regulated by sub-section 28 of section 1550, Kentucky Statutes. This is a special proceeding. It is provided in said section:

"In trying such contest the court shall hear and determine all questions of law and fact without the intervention of a jury and may examine the witnesses orally or require the parties to take the evidence by depositions, in the discretion of the court, or as may be agreed by the parties. . . . The court shall immediately, after the evidence is concluded, consider said contest and determine the same, and his judgment shall be filed in the office of the circuit court clerk as the judgment of the court, and shall have the same force and effect as a judgment rendered by the court in term time. The party desiring to appeal from the judgment of the court shall, on the same day after the same is rendered, execute a supersedeas bond in the same form and to the same effect as other supersedeas bonds in other civil actions for an appeal to the Court of Appeals, and the clerk shall immediately thereafter transmit to the clerk of the Court of Appeals the original papers in said contest, including such transcript of evidence as may be furnished or as may be required by the court or by the parties, and said record of said contest when received by the clerk of the Court of Appeals shall be immediately delivered to the Chief Justice, and said contest shall have precedence over all other business and causes then pending in the Court of Appeals and shall be heard and disposed of by the Court of Appeals as speedily as the exigencies in the case will admit."

The entire original record, including a transcript of all the evidence heard, and copies of all motions and orders with objections and exceptions made thereto, and the ruling of the court thereon, is now before this court. The mode of prosecuting an appeal in a contest case is specifically pointed out by the statute, and in this case it appears that the appellant substantially complied with the provisions thereof. It was the evident intention and purpose of the law-making body in the enactment of this statute to provide a ready and quick method of determining finally all contests arising out of primary elections. No formal bill of exceptions is required in an appeal of a contest case such as this, and a substantial compliance with the requirements of the statute with reference to the prosecution of appeals, is sufficient. The appellant is required to execute a supersedeas bond upon the day of the rendition of the judgment, this bond to be in the regular form employed in civil actions. Thereupon the circuit court clerk is required to immediately transmit the original papers in the contest, including such transcript of evidence as may be furnished, or as may be required by the court, or by the parties, to the clerk of the Court of Appeals, and said record of said contest when received by the clerk of the Court of Appeals shall be immediately delivered to the Chief Justice.

In as much as this is a special proceeding, and the appellant has substantially complied with the provisions of the statute, the motion to dismiss the appeal for want of a formal bill of exceptions is overruled.

Appellant and contestant, Roby, insists that the lower court erred in allowing contestee to amend his response. The notice of contest, which becomes the petition in this character of case, alleged that in certain precincts in Bullitt county a certain number, or more, ballots were, by error, oversight, or mistake, counted for contestee when they were, in fact, cast for the contestant, and should have been so counted. The response attempts to traverse the allegations of the notice with respect to these several precincts, but does so in a very inartful, loose and insufficient manner. To illustrate: it is alleged in the notice "that in Precinct No. 1, Bullitt County, the returns made by the officers of election in said precinct, as counted by the Board of Election Commissioners, incorrectly stated that you (Croan) received 148 votes, and the undersigned (Roby) received 48 votes, for the nom-

ination aforesaid, which returns are untrue and incorrect, in the following respects:

"(1)   25 or more ballots were, by error, oversight, or mistake, counted for you, when they were, in fact, cast for the undersigned, and should have been so counted.

"(2)  10, or more, ballots were, by error, oversight, or mistake, counted for you that should not have been counted at all.

(3)  10, or more, ballots were, by error, oversight, or mistake, not counted at all, when they should have been counted for the undersigned (Roby).

"A correct and legal count and tabulation of the ballots cast in said precinct for the nomination aforesaid will show, and it is true, that you received no more than 113 votes, and the undersigned received not less than 83 votes."

The response of contestee to this paragraph is as follows:

"Contestee denies that in Precinct Number 1, of Bullitt County, the returns made by the officers of the election in said precinct, as counted by the Board of Election Commissioners, incorrectly stated that you (meaning this contestee, Croan) received 148 votes, and the undersigned (meaning contestant, A. L. Roby) received 48 votes for the nomination aforesaid; denies that said returns are untrue and incorrect in the following respects:

"(1)  Denies that 25, or more, ballots were, by error, oversight, or mistake, counted for you (meaning contestee, Croan), when they were, in fact, cast for the undersigned (meaning A. L. Roby), and should have been so counted.

"(2)  Denies that 10, or more, ballots were, by error, oversight, or mistake, counted for you (meaning J. W. Croan) that should not have been counted at all.

"(3)  Denies that 10, or more, ballots were, by error, oversight, or mistake, not counted at all that should have been counted for the undersigned (meaning A. L. Roby).

"(4)  Contestee denies that a correct and legal count and tabulation of the ballots cast in said precinct for the nomination aforesaid, will show, or that it is true, you (meaning Croan) received not more than 113 votes, and the undersigned (meaning A. L. Roby) not less than 83 votes."

From this it will be observed that the response only traverses the allegation that 25, or more, ballots were erroneously counted for contestee, thereby impliedly admitting that 24, or any number less than 25, were wrongfully counted for contestee.

The allegations of the notice with respect to each precinct throughout the county are in exactly the same terms, except for the figures, and the denials in the response are in exactly the same form above cited. If contestee should be held strictly to his original response, his implied admissions are abundantly sufficient to give contestant a large majority of all the votes. Obviously the respondent was attempting to traverse the allegations of the notice, but did so in a very unskillful manner. The demurrer interposed to the response and to the several paragraphs thereof, was properly sustained to the traverses as originally presented. In sustaining the demurrer, the court gave contestee leave until the succeeding day to amend his response in this particular, and of this appellant complains, insisting that the statute provides in sub-section 28, section 1550:

"And the cause shall be tried upon the grounds of contest contained in the original notice by the contestant and the response of the contestee."

And

"No additional ground of contest shall be set up in the reply."

Under section 1535, regulating contest, in general elections, and which contains this provision with reference to the notice of contest:

"The notice shall state the grounds of the contest, and none other shall afterwards be heard as coming from such party; but the contestee may make defense without giving counter-notice," the trial court in the case of Wilson, et al., v. Hines, et al., 99 Ky. 227, allowed the notice to be amended. Upon appeal to this court this ruling was sustained, the court using this language:

"Under this statute a contestant is not allowed to set up by way of amendment an entirely new ground of contest, in addition to those stated in his notice, but he is not thereby precluded from amending and making more specific and definite any ground that is embraced in the notice. This may be allowed, and in fact may be required to be done under the Civil Code (sec. 134), which applied to proceedings of this kind, as well as regular actions, and under which it was proper for

the board and the lower court to permit the contestants to amend as was done, in such manner as to make definite the charge that the act under which the election was held was not in force and the reason for it. That did not in this case make a new or additional ground of contest, but simply made more definite and certain one of the grounds of contest stated in the notice.''

Again, in the case of Clark v. Robison, 159 Ky. 33, when the trial court was about to sustain a motion to strike certain allegations from the notice or petition, because of the insufficiency thereof, contestant offered to amend the allegations to perfect the pleading, and this, by permission of the court, was done over objection of the contestee. Upon appeal to this court, the ruling of the lower court upon that question was upheld, this court saying:

''Clark objected to this, claiming that the amendment set forth additional grounds of contest. It will be noticed that this amendment does not bring in the names of any other voters, or make any charge of additional irregularities. It merely undertakes to do what it purports; that is, to perfect and make more definite and specific the grounds set up in the original petition. The ruling of the court in permitting the amendment to be filed is supported by the case of Wilson v. Hines, 99 Ky. 221.''

Then the opinion proceeds to quote from the case of Wilson v. Hines, the language above.

The amendment in this case was promptly prepared and filed within the time allowed by the trial court and in conformity to the ruling of that court. Undoubtedly such amendment was allowable under our procedure.

Aside from the question of pleading last above considered, the sole question involved is the right of contestant under the evidence to have the ballot boxes opened and a recount of the ballots. This is but a question of evidence, the ballots being evidential only.

The rule seems to be well settled that the ballots cast in an election, in their original and unpolluted condition, are the best evidence of the results thereof.

Before ballots may be introduced to impeach a certificate of nomination or election, it must fairly appear from the evidence that they have been properly lodged with and protected and preserved by the clerk, and have not been tampered with, and that rigorous care has been exercised to prevent a violation of the sanctity thereof,

and if this is not made to appear and the ballot boxes and their contents have been exposed to the wiles of unauthorized and interested persons, they lose their presumptive sanctity and become very dangerous and unreliable evidence.

This exact question—the right to open ballot boxes and recount ballots—has been determined by the court in several cases. In Edwards v. Logan, 114 Ky. 312, it was held:

"The rule may be stated to be that, where the ballots are preserved so that their identity is assured, they can be counted during a contest; and they are undoubtedly better evidence of the vote cast than the returns, and should prevail where there is a difference. But before a recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns, it should be proved.satisfactorily that the ballots had not been tampered with since the election, and that those offered in evidence are the identical ones cast. . . . Every consideration of public policy, as well as the ordinary rules of evidence, require that the party offering this evidence should establish the fact. that the probability of security is proved, but the fact must be shown with a reasonable degree of certainty. If the boxes have been rigorously preserved, the ballots are the best and highest evidence, but, if not, they are not only the weakest, but the most dangerous evidence. . . . From these authorities this court holds: That the ballots cast in an election are the primary and best evidence of the voters' will as expressed therein, and that in case of a contest, as between the certificates of the officers of election and the ballots, the ballots are the best evidence, but that this is conditioned strictly upon the fact that the integrity of the ballots is clearly established; otherwise, the certificate of the officers of election should prevail. That when the ballots are produced from the custody of the officer, whose duty it is to preserve them, are shown to have been preserved from intermeddling from unauthorized persons, and are apparently unchanged, they will be received as evidence of what they may show upon their face, but where they may have apparently been tampered with, or where opportunities have been afforded to unauthorized persons, or to persons interested to tamper with them, then the burden is upon the party producing and relying upon such ballots to establish their integrity clearly and satisfactorily by the evi-

dence.'' Hamilton v. Young, 26 Ky. L. R. 47; Galloway v. Bradburn, 119 Ky. 49; Scholl v. Bell, 125 Ky. 750; Browning v. Lovett, 139 Ky. 480; Baker v. Dinsmore, 138 Ky. 277; Powell v. Horn, 159 Ky. 532; Snowden v. Flanery, 159 Ky. 568; McEuen v. Carey, 123 Ky. 536.

It will thus be seen that the burden of proof was upon Roby to establish the integrity of the ballots proposed to be recounted clearly and satisfactorily by the evidence.

The lower court, in an opinion delivered at the time the judgment appealed from was entered, stated:

''It further appears that for about a week just succeeding their delivery (the ballot boxes) to the clerk by the election officers that they were deposited . . . The ballot boxes were deposited in a room at the rear of the circuit court room on the second floor of the court house in Shepherdsville, it being separated from the court room by a small hall and partition wall; that this hall was reached from the rear stairway leading down into the corridor of the court house, and that during the time mentioned the doors of the corridor on the first floor were unlocked and open both day and night; that the room in which the ballots were kept was locked by the clerk, but the lock was an ordinary knob lock, it not being shown clearly as to the character of key that was used therein, but presumably the character of lock that would be easily opened. . . .

''The proper place for the ballot boxes to be kept is in the clerk's office, and if the clerk removes them to any place without his office it is his duty to exercise rigorous care to provide a place in which they would be secure. The room in which these ballots were deposited does not seem to have been such a place. There is no evidence whatever, to show that these boxes have, in fact, been tampered with; but it must be conceded that the place in which they were kept and the length of time they were there kept, afforded opportunity for tampering.''

In brief, the evidence introduced for contestant, Roby, upon the question of the integrity of the ballot boxes and the ballots is as follows: Some of the ballot boxes were received at the clerk's office on the Saturday night of the primary election by the county court clerk, Ridgway, or his deputy, Mr. McCormick; and some of the boxes did not arrive at the office until the next Monday morning, and some of them were received by the clerk and some by his deputy. They were then placed in the county court clerk's office, but later they were trans-

ferred by the clerk to a vacant room on the second floor of the court house at the rear of the building, and were there stored. To this room there was a door and one or more windows; the door was fastened by an ordinary knob lock, which had a key, and the door was secured by fastening the same with this lock. The clerk had the key in his possession. This room could be reached from the lower corridor of the court house either by a back stairway, or by the main stairway; the room was about twenty-five or thirty feet above the ground on the outside; the ballot boxes remained in this room for some time and until complaint was made, and the clerk and his deputy returned the boxes to the county court clerk's office and piled them beneath a table or desk at a point where they were in plain view and easily accessible to all the persons in the office, including the public. They remained there until the trial in the lower court; it was shown that the clerk did not remain in his office all the time, neither did he have a deputy there at all times; but when he was not there the office was securely locked; that occasionally he left his office and went on the outside to attend to business; that the door and windows to the office were locked at night and when the clerk and his deputy were out; that divers persons were in the office during office hours and sometimes at night the clerk worked in the office; that the locks on the ballot boxes were of a cheap and insecure type of moderate strength, and on some of the boxes the two locks were the same and presumably one key would unlock both locks on a given box; the boxes were made of tin or galvanized iron; the hinges were in good condition at the time of the trial; the circuit judge, upon motion, in the presence of the clerk and counsel, examined the boxes, locks and hinges on the day of the trial. There was no evidence that the boxes had been tampered with or that any one had entered the storage room on the second floor of the court house while the boxes were lodged there, nor that any one had handled or attempted to tamper with the ballot boxes while in the clerk's office. They appeared to be properly preserved.

The party objecting to the introduction of the ballots does not assume the burden of showing they have been tampered with, but the burden is upon the party producing and relying upon such ballots to establish their integrity fairly and satisfactorily by the evidence.

While the ballots in this case were stored in a waste room on the second floor of the court house at Shepherdsville, they were in the custody and control of the county clerk even though they were not under his direct observation and watch. There is a total absence of evidence tending to show that the storage room had been entered, or that the boxes had been tampered with, or even that any one had attempted so to do. Not even a suspicion was raised that any one contemplated such an act. If the boxes had been opened and found in a confused condition and the contents thereof bore marks of desecration or manipulation, the court would at once have rejected the ballots as evidence; on the contrary, if the contents of the ballot boxes had appeared to be intact and unmolested, the court should have received them as the highest and best evidence of the will of the voters expressed in said race at said primary.

Every reasonable precaution was taken by the county court clerk in this case to protect and shield the ballot boxes and their contents, and the lower court erred, under the facts of this case, in declining to open the ballot boxes as further evidence of their integrity.

Upon a return of this case to the circuit court, the trial judge will open the ballot boxes and ascertain whether the contents thereof have been molested, and if found in proper condition and the court is satisfied that the ballots have not been tampered with, a recount should be had.

Judgment reversed, and remanded for proceedings not inconsistent with this opinion, and forthwith mandate is directed to issue.