## Rose v. Shotwell.

Oct. 9, 1945.

W. B. Early and Kenneth Tuggle for appellant.

L. O. Siler and W. R. Henry for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

At the primary election held in Auugst, 1945, there were six candidates for the Republican nomination for the office of city commissioner of Corbin. Two candidates were to be selected. G. W. Walker received the highest number of votes and his nomination is not questioned. The county election commissioners certified that John C. Rose received 537 votes, the next highest number of votes cast for any candidate at the Republican primary election, and that Ed Shotwell received 534 votes.

There are nine voting precincts in the City of Corbin. Seven of them are in Whitley county and two are in Knox county. Within the time required by law, Ed Shotwell, pursuant to the provisions of KRS 122.060, filed a petition for a recount in the seven precincts located in Whitley county. On the recount the court found and adjudged that Ed Shotwell received 540 votes in all of the voting precincts of the City of Corbin, and that John C. Rose received 536 votes, and it was further ad-

judged that Ed Shotwell was entitled to a certificate of nomination as one of the Republican candidates for the office of city commissioner. Rose has appealed, and the principal ground urged for reversal of the judgment is that the court erred in opening the ballot boxes and counting the ballots, since the appellee failed to establish their integrity.

The rule in recount proceedings is that before a ballot box can be opened and the ballots recounted, the one seeking the recount must prove satisfactorily that the ballot box has been kept as the law requires, and that the ballots have not been tampered with. Moore v. Stephenson, 279 Ky. 780, 132 S. W. 2d 316; Lewis v. Hensley, 238 Ky. 58, 36 S. W. 2d 840; Ferguson v. Gregory, 216 Ky. 382, 287 S. W. 952; Roby v. Croan, 177 Ky. 9, 197 S. W. 456. The contestant introduced as witnesses to establish the integrity of the ballots, R. D. Evans, the county clerk, Mrs. Della Sutton, a deputy county clerk, Joe Alsip, who acted as the Democratic member of the county election commission, Jess Ellison, Republican county election commissioner, and Willie Smith, one of five persons appointed and sworn to guard the ballot boxes pending the count by the county election commissioners. The proof shows that the ballot boxes were delivered to the county clerk by the various precinct election officers immediately after the polls closed on Saturday afternoon. The boxes were then taken to the circuit courtroom in the courthouse, where the ballots were counted. The count was suspended about 2 a. m. Sunday, was resumed Monday morning, and was concluded on that day. Seven tables were used and seven sets of counters, tabulators and inspectors. Four of the tables were in the main courtroom, one in the judge's chambers, one in the witness room, and one in the jury room. These latter three rooms opened into the main courtroom. After the ballots were counted they were placed in the ballot box, the box was locked and placed in a room adjoining the witness' room. When the count was suspended on Sunday morning, five men were appointed and sworn by the county clerk to guard the ballot boxes until the conclusion of the count. During the count the three county election commissioners and the county clerk or his deputy were present. After the count was completed on Monday afternoon the door to the room in which the ballot boxes were stored was locked, and on

Tuesday morning the county clerk had an additional lock placed on the door. He retained possession of the keys. When the boxes were opened at the recount, there was nothing to indicate that they had been tampered with. Appellant criticises the manner in which the ballot boxes were handled while the ballots were being counted by the county election commissioners. It seems that Jim Huddleston carried the boxes to the various tables where the votes were being tabulated, unlocked them, emptied the ballots on the table, and after the ballots had been counted locked the box and carried it to the storage room. It is suggested that he or others present had an opportunity to tamper with the ballots. This is mere unsupported surmise. It is improbable that with so many persons present in the courtroom and in the witness room adjoining the storage room the boxes could have been tampered with by any one without detection. The keys were given to Huddleston to lock and unlock the ballot boxes, and he returned them to the county election commissioners. During the taking of testimony the county clerk was requested to purchase a skeleton key and to test with it the lock on the door to the storage room. It was found that the key unlocked one of the locks, and it is argued that this shows the ballots were insecurely protected. There were two locks on the door, however, and there was no evidence tending to show that the room had been entered. We think the evidence satisfactorily established the integrity of the ballots and authorized a recount. In fact, it shows that more care was taken to preserve the ballots than is ordinarily exercised in such cases.

Six of the precincts in which the ballots were recounted showed a discrepancy of one vote, and this was in favor of appellant. In the remaining precinct, which was precinct No. 5, the county election commissioners had counted 45 votes for Rose and 69 votes for Shotwell. On the recount the court found that 45 votes had been cast for Rose and 77 for Shotwell, a gain of 8 votes for Shotwell. About 30 of the ballots in precinct No. 5 were marked by the voters with a lead pencil, and only 5 of these ballots were voted for Rose. It is argued that this is unusual and indicates that the ballot boxes had been tampered with, and these ballots or some of them had been inserted in the boxes after the count by the election commissioners. All of these ballots were signed on the

back by the clerk of election and one of the judges, as required by KRS 118.280, and it is not intimated that the signatures are not genuine. Five disputed ballots counted by the court are filed as exhibits. We find that they were correctly counted with the possible exception of one, which was counted for appellant.

Judgment is affirmed.