## Jenkins v. Martin.

Sept. 10, 1941.

H. H. Owens and O. W. Black for appellant.

J. J. Tye and Kenneth H. Tuggle for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, George W. Jenkins, received a plurality of six votes over the appellee, J. O. Martin, for the nomination as Mayor of Corbin on the Republican ticket at the August primary according to the count made by the election commissioners of Knox and Whitley Counties. Corbin is located partly in Whitley and partly in Knox County, seven precincts being in the former county and two in the latter county.

Pursuant to the provisions of Kentucky Statutes, Section 1550-28 appellee filed a petition for recount of precincts Nos. 28 and 29 of the city, located in Knox County, and on the re-count by the trial court 13 ballots in precinct No. 28 which, apparently, had been counted by the election commissioners for appellant were eliminated from the total of 67 votes received by him in that precinct (appellee having received 107 and a third candidate having received 69). As a result of this action appellee appeared to have a majority of seven votes and the circuit judge thereupon adjudged he was the duly elected nominee for the office in question. This appeal was filed and heard in vacation by a majority of the court pursuant to Section 1550-28 of the Kentucky Statutes. It is contended for appellant that the integrity of the ballots was not established but that on the contrary the evidence, and the ballots themselves, showed beyond question that they had been tampered with after they were counted by the election commissioners and that therefore the count as made by the election commissioners should not be disturbed.

The rule is firmly established that both in contests and re-count proceedings before a ballot box can be opened and the ballots re-counted the one seeking the recount must prove clearly and satisfactorily that the ballot box has been kept as the law requires and that the ballots have not been tampered with. Rich v. Young, 176 Ky. 813, 197 S. W. 442; Phillips v. Kincaid, 194 Ky. 750, 240 S. W. 737; Burd v. Meadows, 276 Ky. 306, 124 S. W. (2d) 85; Conley v. Rice, 252 Ky. 370, 67 S. W. (2d) 478. In the last cited case, where it was discovered after the re-count began that 32 ballots were missing from a ballot box, it was held there could be no re-count of that precinct since the situation disclosed by the ballots themselves during the re-count established clearly that the ballots had not been properly preserved. And in Burd v. Meadows, supra, we said:

"If the ballots have been tampered with, naturally a recount in no way impeaches the original figures for the same thing is not counted."

While the evidence of witnesses introduced for appellee tended fairly strongly to establish that the ballots had been safely and carefully preserved since the election, so that the trial court was warranted in holding that a prima facie case of the integrity of the ballots had been proven, nevertheless a situation was revealed during the progress of the re-count of precinct No. 28 such as to establish beyond question that the contrary was the case and that the count as made by the election commissioners in that precinct should stand.

The County Clerk and his deputies testified to the safe preservation of the ballot boxes but on cross examination of these witnesses it was revealed that the ballot boxes had been kept in a room having an unbarred window through which access could be gained to the room without great difficulty. In fact, the County Clerk testified that on one or more occasions when he had misplaced his key to the office he had gained access by prizing off a plank by which this window was secured and raising the window. It also appears that the two ballot boxes, Nos. 28 and 29, were the first opened and counted on the night of the election and carried back to the office of the County Clerk. When they were brought into the trial court for the re-count they were found on the top of the stack of ballot boxes rather than on the bottom where one would naturally expect to find them.

There was some evidence, not strong, that on the night of the official count there were some ballots in precinct No. 28 not signed by the election officers but an observer at the official count, representing the third candidate in the race, testified that the tabulators examined all the ballots to see if they were signed by the officers and that they were all found to be properly signed. A representative of the press, present as a spectator, testified to the same effect.

The election officers, particularly the Clerk, testified that they did not see how it was possible that as many as 13 ballots could have been unsigned by them in view of the system used in issuing the ballots. It singularly appears that although there were approximately 600 ballots in the box, voted in the race in question and also

in the Democratic primary in the city races and in the county primary election, the only unsigned ballots appearing on the re-count were the particular 13 in question issued in the Republican city primary and each of these 13 particular unsigned ballots happened to be voted for the appellant, although less than one-third of the votes in that precinct were cast for him. It further appears that each of the unsigned ballots was voted with a stencil making a very irregular mark, at least twice as large as the stencil with which the remainder of the 600 ballots in the box were voted and this in the face of testimony which indicates rather clearly that there was no such large stencil in any one of the three voting booths. It may further be remarked that the 13 ballots in question had a deep sharp mark across them and one of them was cut practically in half.

In view of the evidence introduced and the situation revealed by the ballots themselves, there is no escape from the conclusion that by some method access was gained to ballot box No. 28 by some one and the 13 unsigned ballots, voted with the big stencil, substituted for 13 ballots duly signed and regularly voted for the appellant for the purpose of having these ballots rejected on the re-count. In addition to the positive evidence that all the ballots in these precincts, as counted by the election commissioners, were duly signed by election officers it is completely beyond the bounds of probability or even possibility that only 13 ballots should have been unsigned by the election officers and all of them happen to be in this particular race and that each and every one of them should have been voted for the appellant (the appellant receiving only 67 out of a total of 243 in this precinct) and that each and every one of them should have been voted by the big stencil (which was not even in a voting booth) and should be the only ones out of approximately 600 voted by such a stencil.

In short, during the progress of the re-count it was developed that the integrity of the ballots was not established but that on the contrary the 13 ballots rejected by the trial court had been substituted in place of 13 validly cast ballots since the count by the election commissioners. The trial court accordingly should have denied a re-count and adjudged that the official tabulation as made by the election commissioners should stand.

Judgment reversed with directions to enter a judgment in conformity with this opinion.

Judges Thomas, Perry, Ratliff and Cammack concur.