### Combs et al. v. McKenzie.

Feb. 3, 1942.

Wheeler & Wheeler and C. F. Pace for appellants.

R. B. Harrington for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSION-
ER—Affirming.

At the general election held in the 4th magisterial district in Johnson county in November, 1941, George Blanton, the Democratic nominee for magistrate, received a plurality of 7 votes over his Republican opponent, Trigg McKenzie, according to the tabulation and returns of the election commission. In due time McKenzie filed petition for a recount of the vote in the Flat Gap precinct. Summons on the petition was issued by the clerk of the Johnson circuit court and delivered to Julius Daniel, sheriff of Johnson county. The sheriff placed the summons in the hands of his son, Carl Daniel, who executed it on the named defendants and made his return thereon as deputy sheriff of Johnson county. Blanton filed motion to quash the return on the ground that Carl Daniel was not in fact, or at all, deputy sheriff at the time of the service of the summons. The motion was overruled. A special demurrer attacking the jurisdiction of the court was filed and overruled, and about which no complaint is made on this appeal. The general demurrer to the petition was overruled and without waiving the demurrer, Blanton filed his answer, counterclaim, and cross petition in which he challenged the integrity of the ballots, by denying that the ballot boxes or the contents had been preserved in the manner prescribed by law; he then asked that the remaining precincts in the district, viz., Low Gap, Red Bush, Volga, and Keaton be recounted, in the event the court should determine that the contestant was entitled to a recount in

the Flat Gap precinct. The court ruled that the integrity of the ballots had been maintained and directed a recount of all the precincts. The original vote, as certified by the election commissioners in the precincts requested by contestee to be recounted, was determined to be correct; but the recount of the ballots cast in the Flat Gap precinct changed the result of the election in the entire district from a majority of 7 votes for Blanton to a majority of 9 votes for his opponent. The chancellor thereupon decreed that contestant, Trigg McKenzie, was the duly elected magistrate of the 4th magisterial district of Johnson county and from this judgment contestee has appealed.

The questions for our determination are: (1) Whether the service of the summons by Carl Daniel was sufficient in law to bring the contestee before the court, and (2) whether the court properly ruled that the integrity of the ballots had been maintained. It seems that about a year previous to the serving of the summons, the county judge of Johnson county had entered an order discharging Carl Daniel as deputy sheriff of Johnson county; but that a short time thereafter, although the order of discharge had not been set aside, he recommenced performing the duties ordinarily attendant upon the office of deputy sheriff under the direction of his father who was the duly elected, qualified, and acting sheriff of the county. He served processes under the direction of the sheriff, wore the insignia and badge of the office, and was generally considered by all the officers of the county, as well as lawyers, litigants, and the public in general to be a deputy sheriff of the county. The county judge recognized him as such deputy by placing various processes of the county or quarterly court in his hands and accepting his returns thereon. He worked out of the sheriff's office and was directed by the sheriff to perform the duties of deputy continuously until after the date of the execution of the summons herein. Thus, with the knowledge and acquiescence of his superiors in office, he exercised the duties of deputy sheriff in such circumstances as are calculated to induce the public to submit to and invoke his authority, supposing him to be rightfully possessed thereof. In such state of case, upon the principles of public policy and justice, the law will impute to him, as a de facto officer, the authority he assumed to exercise. Cooley's Constitutional Limitations, page 750; Wendt v. Berry, 154 Ky. 586, 157 S. W. 1115,

45 L. R. A., N. S., 1101, Ann. Cas. 1915C, 493; Holland v. Stubblefield, 182 Ky. 282, 283, 206 S. W. 459; Allen v. Maynard, 202 Ky. 477, 260 S. W. 2, and cases therein cited.

In Cooley's Constitutional Limitations, supra, we find the principle to be stated in the following language:

"* * * for the sake of order and regularity, and to prevent confusion in the conduct of public business and insecurity of private rights, the acts of officers de facto are not suffered to be questioned because of the want of legal authority, except by some direct proceeding instituted for the purpose by the state or by some one claiming the office de jure or except when the person himself attempts to build up some right or claim, some privilege or emolument, by reason of being the officer he claims to be. In all cases the acts of an officer de facto are as valid and effectual while he is suffered to retain the office as though he was an officer by right, and the same legal consequence will follow from them for the protection of the public and of third parties."

We therefore conclude the service of the summons was sufficient to bring the contestee before the court.

There remains for our consideration the question as to whether the evidence was sufficient to sustain the decision of the court that the integrity of the ballots cast in the Flat Gap precinct had been maintained. Before the election commission commenced counting the ballots, it was ascertained that one of the commissioners had lost his key to the locks. Access to the ballots was obtained by breaking the hasps on the boxes. After the count another lock was substituted, the key to which was delivered to the commissioner. The ballot boxes were placed in a room on the third floor of the county jail, which was in a building separate from that which contained the county clerk's office. The windows of the room were protected by steel bars, and the room was otherwise fortified with a stone wall 8 inches thick and a steel door which barred the entrance. It was established by the evidence that the only keys to the steel door were delivered to, and remained in the possession of, the county clerk until delivered to the circuit clerk in compliance with an order of the court. When the recount was ordered, the county clerk and the circuit clerk entered the room where the

ballot boxes were stored. Both testified that at that time they found the boxes and locks to be in the condition in which they were left on the night of the original count, and that in their opinions the boxes had not been tampered with or bothered in any way. The county clerk stated that it was impossible for any one to get into the boxes without breaking the locks. While the burden is on the contestant to establish the integrity of the ballots, the requirement in that respect must be reasonable, and it is incumbent upon him only to prove circumstances from which a logical inference can be deduced that the ballot boxes and their contents have not been disturbed. Phillips v. Kincaid, 194 Ky. 750, 240 S. W. 737; Land v. Land, 244 Ky. 126, 50 S. W. (2d) 518. All of the boxes were kept in the same place. The fact that the recount showed the same results as the original count in the Red Bush, Low Gap, Volga, and Keaton precincts shows that the boxes containing those ballots were not tampered with. There was no circumstance or fact in connection with the box containing the ballots of the Flat Gap precinct from which an inference could be drawn that its security from tampering was not maintained in the same manner as the other boxes; and, although we have held that proof of the integrity of the ballots of one precinct is not conclusive of the integrity of the ballots of another, Conley v. Rice, 252 Ky. 370, 67 S. W. (2d) 478, nevertheless, such evidence may be considered as persuasive of that fact. It was shown that the officer charged with maintaining the integrity of the boxes and their contents placed them in a place of security; that she retained possession of the only keys to the room wherein the boxes were kept; that upon an examination immediately before the recount they appeared to be in the condition in which she left them. We are of the opinion that such evidence met the burden imposed by law on the contestant to establish the integrity of the ballots cast in the Flat Gap precinct.

Since the judgment of the chancellor conforms to the views herein expressed, it is affirmed.