## Wilhoit v. Liles et al.

Oct. 12, 1945.

A. W. Mann and Woodward, Dawson, Hobson & Fulton for appellant.

D. G. Diamond and Lovel H. Liles for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

In the primary election held on August 4, 1945, Roy Wilhoit, L. H. Liles and T. E. Nickel, were candidates for the Republican nomination for Commonwealth Attorney of the Twentieth Judicial District, composed of the counties of Lewis and Greenup. Wilhoit was the victor over Liles by a margin of 11 votes and Nickel ran last. Within the time prescribed by statute, Liles filed this action against Wilhoit and the county board of Election Commissioners, under KRS 122.060, asking a recount. Included in the petition were averments that Wilhoit had violated the Corrupt Practices Act, KRS 123.010 et seq., as KRS 122.060 permits a petition for a recount to be joined with an action to contest an election. The answer was merely a traverse. No proof was taken on the contest branch of the case and we are concerned only with the recount.

A recount of the ballots in all precincts in both counties resulted in a judgment declaring Liles the nominee by 56 votes and the Election Commissioners of the two counties were ordered to reconvene and certify the returns of the recount of the vote of their respective counties to the State Election Commission. The judgment was entered on August 28, and Wilhoit filed his supersedeas bond within the time provided in KRS 122.040 and prosecuted an appeal to this court which raises but two questions: (a) Whether the judgment should be reversed for the trial judge's failure to vacate the bench upon affidavit filed by Wilhoit; (b) was the in-

tegrity of the ballots established by Liles so as to entitle him to a recount?

Before reaching these questions, we are met with Liles' motion to dismiss the appeal because the transcript of the evidence was not filed in this court within 10 days after the entry of the judgment as is provided in KRS 122.060. This motion must be overruled.

The judgment entered August 28 gave Wilhoit until September 15 to prepare and file his bill of exceptions wherein he incorporated in the record the testimony heard orally before the trial judge and reported by the official stenographer. Wilhoit filed his entire record here on September 5 with the exception of the transcript of the evidence. On September 6, the tenth day from the entry of the judgment, he filed a motion asking the Chief Justice to allow him until September 17 to file a transcript of the evidence, as he had been unable to get the trial judge to sign his bill of exceptions. This time was granted and he filed this transcript on September 11.

Liles insists that neither the trial court nor this one can extend the time for filing the record here beyond the ten days allowed by statute; that no motion for new trial was filed; and that after the supersedeas bond was executed the trial judge could enter no further orders such as approving the bill of exceptions on September 10.

Section 738 of the Civil Code of Practice provides the time for filing a record here on an ordinary appeal, unless for cause shown that time is extended by us. In construing this section in Cline v. Cline, 198 Ky. 585, 249 S. W. 348, it was said that the time for filing the transcript is mandatory, and when no part of same has been filed in the required time there can be no extension; but if an incomplete record has been filed in good faith within the prescribed time, and the ends of justice will be served by allowing an additional or supplemental transcript to be filed, the court should permit it upon the proper showing. Under the Cline opinion, as well as under our rule 3, subsec. 14, this court may before submission allow an additional part of the record to be filed if it deems such to be necessary in the furtherance of justice, although no motion is made for an extension. If that can be done without a motion, certainly we can

grant additional time on motion and for cause shown for filing a supplemental record where part of the record has been in good faith filed in time.

The right to a recount or to contest an election, and the procedure to be followed, is purely statutory. It is provided in KRS 122.030 that the court shall hear and determine all questions of law and fact without a jury, and that the proof may be taken orally or by deposition. No provision is made for a motion for a new trial, hence it is not necessary that such a motion be made in order to perfect an appeal.

The execution of a supersedeas bond does not prevent the trial judge from subsequently approving a bill of exceptions. Otherwise, a litigant with a judgment rendered against him at one term who asked and was granted until a day certain in the next term to file his bill of exceptions, would find himself in the anomalous position of being unable to prosecute his appeal if he protected himself from an execution by superseding the judgment.

The substance of the affidavit which Wilhoit filed to swear Judge Parker off the bench is that the Judge was an unsuccessful candidate in the primary, was violently opposed to Wilhoit, personally and politically, and on many occasions expressed a deep-seated, violent, and malicious dislike for and animosity toward him, both personally and as a candidate, and that the Judge was active in advocating the candidacy of Liles, which he openly expressed. It further averred that the Judge was very ill and debilitated and of such mental condition as to be unable to undergo the strain of the trial, and could not and would not render a fair judgment therein.

Appellant argues that Judge Parker exhibited his animus by filing a response to this affidavit when he was bound to know that the truthfulness of the facts stated therein cannot be questioned (Benge v. Commonwealth, 296 Ky. 82, 176 S. W. 2d 131); by holding appellant in contempt of court for filing the affidavit; by ruling that the affidavit came too late after special demurrer, motion to strike, motion to dismiss, and answer, when the record shows that the affidavit was the first paper appellant filed and the other pleadings expressly recited that they were filed without waiving the affidavit.

Judge Parker should have vacated the bench but his failure to do so has not prejudiced appellant here because we will examine the record for ourselves and will reach our own conclusion without giving weight to the findings of a trial judge when the affidavit clearly shows was disqualified from trying the case. Such cases as Massie v. Commonwealth, 93 Ky. 588, 20 S. W. 704, and Kentucky Journal Publishing Company v. Gaines, 139 Ky. 747, 110 S. W. 268, holding that it is reversible error for a judge not to vacate upon the proper showing being made regardless of whether the record of the trial shows any prejudicial rulings, are common law cases where in a subtle manner the judge ''might knife a party without it appearing in the record.'' Inasmuch as we are to pass upon the facts, and in view of the necessity of an early decision in this case in order that the nominee's name may go on the ballot for the general election on November 6, 1945, we will not reverse for the error of the judge in not vacating the bench. But let it be known that we are not modifying or overruling the Massie or Gaines opinions.

It might be stated the general rule is that ballot boxes will not be opened for a recount until the person seeking it first shows not a mere probability that the integrity of the ballots has been preserved since the election, but that fact must be established with a reasonable degree of certainty. Edwards v. Logan, 114 Ky. 312 70 S. W. 852, 75 S. W. 257; Phillips v. Kincaid, 194 Ky. 750, 240 S. W. 737; Roby v. Croan, 177 Ky. 9, 197 S. W. 456; Jenkins v. Martin, 287 Ky. 557, 154 S. W. 2d 242. And one of the essential elements in establishing the integrity of the ballots is to show that the boxes have been kept as provided by statute and have not been tampered with since the election.

In Lewis County there was no effort made to comply with the statute as to the protection of the ballot boxes. After the polls closed, instead of the boxes being delivered to the county court clerk, who should put a guard over them until they are counted, KRS 118.360, they were stacked in the county judge's office without any sort of protection. After the count, instead of being returned to the county clerk, the boxes were left stacked in the county judge's office, to which the public had access, even during his absence for hours at a time, until this action was filed on August 11. During the week's

interim a public meeting was held in the county judge's office one night and he left the keys to his office in a restaurant in order that the person in charge of the meeting could have access to his office, and he did not regain his keys until the following morning. The county judge was asked to examine the boxes when on the stand and he testified that in Burtonville precinct No. 1 and Tollesboro precinct No. 2, the lids of the boxes were sprung and that paper could be inserted in the boxes.

Since no effort was made to care for the boxes in Lewis County as provided by statute, and as for a week they were exposed to the wiles of the public, we have reached the conclusion that it would be dangerous to open them since by so doing unreliable evidence could be used to impeach the Election Commission's return. The trial judge erred in opening the boxes in Lewis County and recounting the vote, and the original returns showing Wilhoit received 1320 and Liles 1143 votes should stand.

Better care was taken of the Greenup County ballots. After the count they were returned to the county court clerk who stored them in the quarterly court room where they remained under the care of two guards until the filing of this suit when they were delivered to the circuit court clerk, who kept them locked safely in a vault in his office until produced before the trial judge. H. H. Donald, one of the Election Commissioners, testified that the ballots were placed back in the box loose after being counted and that one of the boxes would not lock, which was Fullerton No. 1 or No. 2. Harlan Bowling, one of the men who guarded the boxes until they were delivered to the circuit clerk, also testified that one of them would not lock on the night of the original count, but he could not remember the precinct from which it came. Both Donald and Bowling examined the boxes while on the stand and testified that all of them were at that time locked. At first blush, it would appear that someone had tampered with this particular box, or at least had locked it, as the record fails to show that this act was done by anyone in charge of these boxes.

Upon the recount of the two Fullerton precincts there was no change in the vote, and this shows conclusively there had been no tampering with those ballots. Of course, somebody locked this box after Donald and

Bowling noticed it would not lock on the night of the original count. But locks at times act capriciously and if the county clerk, circuit clerk, or some deputy in either office, succeeded in making the lock close on this particular box, this would not amount to tampering with it. Such would be an innocent act to protect the integrity of the ballots. Nor does the subsequent locking of this box indicate that there was tampering with the other boxes in Greenup County as they appeared to be regular and in good order on the recount. And the fact that after the original count the ballots were placed loose in the boxes, and KRS 118.390 was not complied with in that the spoiled ballots and stub books were not enclosed in an envelope to the clerk, does not impair the integrity of the ballots so that they may not be recounted. Election officers are usually laymen, and if courts should hold their failure to comply with every election statute to the very letter destroys the integrity of the ballots, there would be few, if any, elections upheld in face of a contest, or where a recount could be obtained.

The trial judge properly granted a recount in Greenup County as the proof showed the integrity of the ballots in that county had been maintained. The recount in Greenup County showed that Wilhoit received 701 and Liles 881 votes. When these respective figures are added to those shown by the original count in Lewis County where Wilhoit received 1320 and Liles 1143 votes, it is seen that in the district composed of the two counties Wilhoit received a total of 2021 and Liles a total of 2024 votes, giving Liles the nomination by a margin of three votes.

The judgment is affirmed.

Judge Dawson not sitting.