## ASHCRAFT v. EDMONDSON et al.

Court of Appeals of Kentucky.
Sept. 28, 1951.

Wm. G. Reed, Carrollton, for appellant.

John L. Vest and Walter Vest, Walton, F. S. Connely, Warsaw, for appellees.

STANLEY, Commissioner.

The original returns of the August, 1951, primary election for the Democratic nomination for the unexpired term of County Clerk of Gallatin County were: Walter Edmondson, 734, and Mrs. Thelma B. Ashcraft, 719 votes. Mrs. Ashcraft filed a petition asking the circuit court to recount the ballots but combined her request under the particular statute, KRS 122.060, with other allegations constituting a contest of Edmondson's election on the ground that the early closing of the polls in one precinct had deprived her of twenty votes. This ground of contest, however, seems to have been abandoned, and the case was determined as if it were exclusively a recount proceeding. The court ruled the integrity or security of the ballots had not been established and declined the recount. The petitioner appeals.

Not much attention was paid to the ballot boxes after the count on Saturday night. They were left scattered around the circuit court room, and there is disagreement and unsureness as to whether all the locks were fastened. In contradiction to the testimony of those who stated they were all locked stands the admission that the testimony was really based upon the fact that it had been the custom to lock the ballot boxes and the concession that many of the Republican boxes were unlocked

even at the time of the hearing. There is positive evidence that on Sunday morning when the janitor cleaned up the room and stacked the boxes, and on Sunday night, when he was there again, all were unlocked. But on Monday morning the boxes were found to be locked. It is stipulated that the boxes showed no external evidence of having been tampered with

The law is well settled. It is that before the court is authorized to recount the ballots, it must be shown, with reasonable certainty—not absolute—that the boxes have been protected and the ballots have been preserved in the condition they were in when counted originally by the Board of Election Commissioners. Stated in another way, the candidate asking a recount must "prove circumstances from which the logical inference can be deduced that the ballot boxes and their contents have not been disturbed." Combs v. McKenzie, 289 Ky. 360, 158 S.W.2d 938, 940; Wilhoit v. Liles, 300 Ky. 564, 189 S.W.2d 851. Sometimes, where only suspicion is raised that the boxes may have been tampered with the court is warranted in examining the ballots and other contents, from which examination either the integrity or the absence of security of the ballots may be determined. Wright v. Frazier, 311 Ky. 741, 225 S.W.2d 310.

The proof being that some unauthorized person or persons had access to the boxes and tampered with them and their locks, it is a reasonable conclusion that the integrity of the ballots themselves had been violated. The court need not have guessed otherwise. It has been said that the courts will not undertake to outwit election crooks. It is true that there is temptation on the part of the prima facie winner and his partners to make it appear, at least, that the ballots have not been preserved in order to circumvent a recount. Thus, the innocent opponent may suffer. On the other hand, there is an equal temptation on the part of the loser and his zealous supporters to alter the contents of the boxes so that a recount will establish his election. We hasten to add that no aspersion is cast upon either of these

parties, for neither is brought under suspicion. The observation is made as a potent reason for the demand of proof of the maintenance of the integrity of the ballots. The returns of the election commissioners may not be impeached by questionable ballots, so the presumption that the original count was correct must prevail.

We think the court properly denied the recount, and the judgment is

Affirmed.