Hobart ROBINSON, Appellant,

v.

Burl OSBORNE et al., Appellees.

Court of Appeals of Kentucky.

June 20, 1958.

As Modified on Denial of Rehearing
Aug. 5, 1958.

Baird & Hays, Pikeville, for appellant.

Sanders & Redwine, J. Ervin Sanders, L. Clyde Farley, Pikeville, for appellees.

SIMS, Judge.

Hobart Robinson and Burl Osborne were rival candidates for the office of magistrate in the Second District of Pike County in the general election held on November 5, 1957. Robinson received 1,467 and Osborne 1,471

votes. On November 13, Robinson filed this action under KRS 122.100 for a recount.

After hearing some testimony relative to the integrity of the ballot boxes the judge, reserving a ruling on Osborne's objection that the integrity of the boxes had not been established, opened the boxes and a recount was made which resulted in Osborne receiving 1,462 and Robinson 1,481, or a majority of 19 votes.

After the recount Osborne renewed his objection, on the same ground, to the opening of the boxes and this time the court ruled the evidence heard before the boxes were opened did not establish the integrity of the boxes and the ballots and he dismissed the complaint. Thereupon, Robinson offered more proof as to the integrity of the boxes, which the court refused to hear but for the benefit of the record permitted him to take additional proof "by way of an avowal." The judge in his opinion wrote as to this avowal testimony, "If it had been introduced last Monday (the day he permitted the boxes to be opened), my decision would have been different." In his ruling relative to the evidence first taken on the integrity of the boxes the judge said, "The court further finds that upon opening the said boxes that he did not find anything in their appearance to excite suspicion that they had been tampered with."

We have two questions for determination on this appeal. First, did the evidence heard before the boxes were opened establish with reasonable certainty they had been protected and the ballots had been preserved in the condition they were in when originally counted by the election commissioners? Second, after the boxes were opened and the ballots counted, could the court receive additional evidence tending to show the integrity of the boxes and of the ballots?

The original count was completed Saturday night, November 9, following the election on November 5. This action was filed November 13, on which day a regular judge of the Pike Circuit Court ordered the county court clerk to deliver the ballot boxes used in magisterial district No. 2 to the circuit clerk, and on the 14th this order was complied with as is shown by the signed receipt of the county clerk filed in this record as an exhibit. To establish the integrity of the boxes appellant introduced Claude Reed, Clerk of the Pike Circuit Court, who testified the boxes were stacked behind one of the counters in his office and the stub books were not enclosed in envelopes (as required by KRS 118.390) but were placed on top of the ballot boxes. He further testified the public had access to the part of his office where the boxes were stacked, but that the day he testified the boxes appeared to be in the same condition as they were when delivered to his office on the 14th and did not look like they had been tampered with; that he or one of his deputy clerks was in the office all during office hours and at night the office was locked and only he and three deputies had keys to the office. Only one of his deputies, Ina Gaye Wallace, testified, and her testimony was practically the same as Reed's, except she received and receipted for the boxes when they were delivered to his office by the county clerk. This receipt shows all boxes were securely locked.

Bessie Arnold, county clerk, testified that after the original count, the 12 ballot boxes in question were delivered to her office, stacked near the front but were later stacked around the walls where the deed books are kept, and the stub books were placed on top of the boxes. As far as she knew, the boxes and stub books were in the same condition when she delivered them to the office of the circuit clerk as they were when delivered to her office by the election commissioners. The general public had access to the deed books which were very close to the boxes, but she did not see anybody tampering with the boxes. There were three keys to her office; one she carried and two deputies, Louise Stratton and Lillian Pearl Castle, each carried a key to the office. She could not state that these boxes

were locked when the election commissioners delivered them to her office after the original count, but she knows they were all locked when she delivered them to the circuit clerk's office. Mrs. Arnold did not observe any of these boxes "as to whether or not the side was caved in or you could put your hand under the lid."

The record shows the trial judge personally received the keys to the boxes from two commissioners, Alex Blackburn and Lawrence Branham. The third commissioner, Luther Damron, sent his key by his daughter to the judge.

Appellant put on no further proof, as above stated, and the judge proceeded to open the boxes. The recount gave appellant 14 additional votes and took 9 votes from appellee. There were 5 more ballots counted on the recount than on the original count. The record does not show where these 5 additional ballots came from, although filed as exhibits are 7 ballots which were presented to the court for his decision and he gave his ruling on each. It could have been that on the original count 5 of these ballots were found to be spoiled, while on the recount the judge ruled they were not spoiled and they were counted. However, his ruling does not show this but merely stated these ballots should be counted for one or the other of the candidates, with the exception of one ballot, exhibit No. 7, which he declined to count for either. Our examination of these 7 ballots filed as exhibits convinces us that the election commissioners well might have decided at least 5 of them were spoiled and should not have been counted.

There were only three precincts where any material errors were found in the retabulation. In making this statement we do not refer to the rulings of the court on the contested ballots but only refer to the retabulation. In precinct No. 2 Osborne gained one vote and Robinson four; in precinct No. 14 Osborne lost four votes and Robinson gained four; in precinct No. 73

Osborne lost eight votes and Robinson gained six.

After the recount was finished appellee renewed his motion, on the same ground, to deny the recount. The court then decided that when he opened the boxes their integrity had not been established by the proof because it did not show the keys to the boxes held by the three commissioners from the time of the original count until these keys were delivered to the trial judge had remained in possession of the election commissioners; that there was no testimony the county clerk and her two deputies retained possession of their keys to the county clerk's office during the time the boxes were left in that office from November 9 to November 14; nor was there any evidence showing that the circuit clerk and his three deputies had retained possession of their keys to the office of the circuit clerk from November 14 until the recount began. Nor did the record disclose whether the boxes had been guarded during the original count while being taken to the circuit courtroom (where the original count was conducted) and while being returned to the county clerk's office.

■■ It is provided in KRS 122.100 that before the ballot boxes may be opened for a recount, their integrity must be satisfactorily established. The rule is that the boxes will not be opened for a recount unless the person asking for it first shows more than a probability that their integrity has been preserved since the election, which fact must be established with a reasonable degree of certainty. One of the essential elements in establishing the integrity of the ballots is to prove that the boxes have been kept as provided by statute and that they have not been tampered with since the election. Wilhoit v. Liles, 300 Ky. 564, 189 S.W.2d 851, 854; Ashcraft v. Edmondson, Ky., 242 S.W.2d 635. But this does not mean the proof must conclusively show that every door to every possibility for tampering with the ballots has been barred, which we gather from the opinion of the trial judge

**684**

was the interpretation he placed on the rule.

In Phillips v. Kincaid, 194 Ky. 750, 240 S.W. 737, it was said that before the boxes can be opened for a recount their integrity should be shown with reasonable certainty but it was not necessary to establish it beyond every possibility. The one seeking the recount should not be required to do more than prove circumstances naturally and logically inducive to the inference that the boxes had not been violated.

■ In the case at bar the only gap in appellant's testimony as to the integrity of the boxes was that he failed to show the keys the three election commissioners carried to the boxes and the keys the circuit clerk, the county clerk, and their deputies, carried to their respective offices never got out of their possession. Admittedly, it would have been better had appellant shown these facts by his proof before the boxes were opened on the recount. But in the circumstances presented by this record we cannot say that such proof was necessary before a recount could be had. There was nothing to cast suspicion on the integrity of these boxes and when they were opened for the recount the judge found everything to be regular. Manifestly, KRS 122.100 must be complied with and testimony must first be introduced to satisfactorily establish the integrity of the boxes before they can be opened. But where no suspicious circumstances exist, as was the case here, it should not take as high a degree of proof as where there was no effort made to comply with the statutes in preserving the boxes intact.

■ Although in the instant case the trial judge purported to reserve his ruling on the integrity of the boxes, his action in opening the boxes and proceeding with the recount was in effect a ruling that their integrity had been established. This ruling was correct since it was supported by ample evidence, as above shown. Also, the court was correct in refusing to permit appellant

to take additional proof. The error he made was in changing his ruling after the boxes were opened. The trial judge should never reserve his ruling on the integrity of the boxes and proceed with the recount. Unless he is satisfied from the evidence the integrity of the boxes has been preserved, he should not open them. In a suit merely seeking a recount if fraudulent or illegal ballots are found in the boxes, then such ballots can only be questioned by a contest suit, since a recount merely tests the accuracy of the count of the canvassing board. Hogg v. Howard, Ky., 242 S.W.2d 626, 629; Monroe v. Graves County Bd. of Election Com'rs, Ky., 293 S.W.2d 725, 727.

The judgment is reversed and one will be entered in conformity with this opinion, declaring Robinson elected by a majority of 19 votes.