**Frank SECREST, Appellant,**

v.

**Eddie B. WELLMAN et al., Members of the Greenup County Board of Election Commissioners, and James Miller, Appellees.**

Court of Appeals of Kentucky.

Feb. 19, 1965.

H. David Hermansdorfer, Diederich & Hermansdorfer, Ashland, Frank Warnock, Greenup, for appellant.

L. H. Nicholls, Greenup, P. H. Vincent, Ashland, for appellees.

PALMORE, Judge.

In the general election held November 3, 1964, Frank Secrest and James Miller were candidates for membership on the Greenup County School Board from Educational Division No. 5, consisting of two precincts. Miller was certified the winner by a vote of 322 to 321. On November 10, 1964, Secrest filed a recount proceeding pursuant to KRS 122.100. In defense, Miller pleaded that the integrity of the box containing absentee ballots had been violated in the interim since the election. At the close of Secrest's evidence on this question the court entered findings of fact and a judgment denying a recount. Secrest appeals.

The voting machine tabulation, 320 for Miller and 312 for Secrest, is not contested. According to the records of the county court clerk 14 absentee votes were received for the two precincts in question. The election commissioners testified that four were rejected, one was unmarked, and 11 were counted, making a total of sixteen. Some kind of confusion is evident at once.[1]

After the votes were counted on election night the absentee ballot box was properly locked and delivered to the office of the county court clerk, where it was kept under guard until the next afternoon. The county clerk then placed it in custody

---

1. We are further mystified by the fact that both briefs say the final tabulation was 321 to 320 in favor of Miller, which would mean that only nine absentee votes were counted. That would tally with the clerk's record of 14 received.

of the circuit court clerk, who had the only lockable vault in the court house. On Friday morning, the third day after the election, the election commissioners took the box to the circuit court room and opened it for the purpose of examining the four sealed envelopes containing the rejected ballots. It was apparent, of course, that a recount was in prospect, and the commissioners took it on themselves to call on several attorneys to examine the envelopes, which was done in their presence.

The absentee ballot box remained open in the court room from about 10:00 A.M. until 1:30 P.M. on Friday, November 6, 1964. Except for a five-minute interval during that time one or more of the election commissioners were present and the evidence is rather conclusive that no impropriety took place. The focus of the case is on that five minutes,[2] in which the sheriff was away investigating an accident, one of the commissioners had gone to take his little girl to school, and the other commissioner had found it necessary or desirable to go downstairs for a moment.

The handling of the ballots took place on a table in that portion of the court room within the bar. There were several interested spectators outside the bar in the seats provided for the general public. Among them, at various times, were Miller and his wife, though it does not appear whether either of them was present during the crucial five minutes. Two of the spectators, both of whom later signed as sureties on the cost bond Secrest was required to execute in order to maintain this recount proceeding,[3] testified positively that no person was present inside the bar while all three commissioners were absent, and that at no time during the day had anyone other than the commissioners and the attorneys entered that particular area of the court room. The gist of this evidence is that no one touched the ballots or the ballot box except in the presence of one or more of the commissioners.

The trial court denied a recount on the ground that the evidence produced in support was not sufficient to establish the integrity of the absentee ballot box.

■ "While the burden is on the contestant to establish the integrity of the ballots, the requirement in that respect must be reasonable, and it is incumbent upon him only to prove circumstances from which a logical inference can be deduced that the ballot boxes and their contents have not been disturbed." Combs v. McKenzie, 289 Ky. 360, 158 S.W.2d 938, 940 (1942). When the evidence raises no more than a suspicion of tampering, the rule is that the contents of the box or boxes should be examined and that the evidence derived from such inspection be considered by the court in determining the allowability of a recount. Monroe v. Graves County Bd. of Election Com'rs, Ky., 293 S.W.2d 725, 727 (1956).

■ From the evidence thus far heard in this case it is doubtful even that a "suspicion" has been raised. If the ballots were disturbed during the brief interval when none of the commissioners were present, several persons present in the spectator section of the court room are bound to have witnessed it. Let them come forward. In the absence of countervailing evidence it is our opinion that a prima facie case has been established entitling Secrest to a recount.

The judgment is reversed for further proceedings consistent with this opinion.

---

2. The trial court found that aside from the time it was in the court room on November 6 the box had been "securely locked" until the day of the hearing.

3. One of these witnesses was the school superintendent.